[No. 3632.]

## JOHN GARDENHIRE *v*. THE STATE.

1. ROBBERY — PENALTY.— CHARGE OF THE COURT which incorrectly instructs the jury as to the penalty assessable upon conviction for a criminal offense, even though the mistake be in favor of the accused, is fundamental error.

2. SAME.— Article 722 of the original Penal Code, fixing the punishment for robbery at confinement in the penitentiary not less than two nor more than ten years, was so changed by the amendment of April 12, 1883, as to fix the penalty at confinement in the penitentiary for life or for a term of not less than ten years. Robbery being the offense charged by the indictment in this case, and the proof showing it to have been committed since the amendment became operative, the trial court erred in giving in charge the penalty prescribed by the said article 722 before its amendment in 1883.

APPEAL from the District Court of Dallas. Tried below before the Hon. G. N. Aldredge.

The conviction in this case was for the robbery of F. D. Lavois and his wife, M. E. Lavois, in Dallas county, Texas, on the —— day of January, 1885. A term of four years in the penitentiary was the penalty assessed by the jury.

F. D. Lavois was the first witness for the State. He testified that he lived at Eagle Ford, Dallas county, Texas, where he kept a store. On the night of January 4, 1885, the defendant came into that store between 8 and 9 o'clock, and called for some cigars. Witness gave them to him, and he, instead of paying for them, drew his pistol, presented it at witness, demanded witness's money, and told him to get it quick. Witness, replying that the money was in the next room, called to his wife to bring it, which she did, and he handed it to the defendant. The amount was some $15, consisting of a ten-dollar United States currency bill, and $5 in silver coin. Witness surrendered this money through fear of his life, and not voluntarily. Defendant went backwards out of the house. He had his face, save his nose and eyes, covered with a red nubia. During the transaction described a light stood on the counter between the witness and the defendant, and the witness looked into the defendant's eyes for at least three minutes.

Cross-examined, the witness testified that the robbery was perpetrated on a dark night. After the occurrence, the witness told his wife that he thought he recognized John Gardenhire as the robber. Witness did not make complaint against Gardenhire on the next day, but went to Mrs. Jordan's to ascertain his whereabouts, if possible. Witness did not see the defendant until after his arrest for

burglarizing Mr. Luck's store. Luck and witness then went together to the county jail and called for the defendant, when the witness identified him as the perpetrator of the robbery for which he is now on trial. Luck's store, the same now in charge of witness, was burglarized twice, and before the witness took charge of it. Witness was positive that the defendant was the man who robbed him, and believed, as everybody in the neighborhood did, that he burglarized the store while in charge of Luck, on the two occasions mentioned.

Mrs. M. E. Lavois testified, for the State, that she heard the robber demand the money of her husband. Her husband told her to bring him the money, which she did. Witness dropped a quarter, and was ordered by the robber to pick it up, which she refused to do. Witness knew the defendant at the time, and, when told by her husband that he thought the defendant and the robber were one and the same, she thought so too, as she could not imagine who else the robber could be. In common with others of the neighborhood, she believed defendant to be the man who on two occasions before the robbery burglarized Luck's store. The robber wore a black coat and hat, and a red nubia about his face. Witness could not upon oath say that defendant was the robber, but thought so.

John Luck testified, for the State, that he saw the defendant on the evening of and before the robbery of Lavois's store. He then wore a black coat and a black hat. Defendant sustained a bad reputation in the neighborhood of Eagle Ford. Witness believed him to be the man who twice burglarized his, witness's, store, and, so believing, paid $50 for his arrest.

The motion for new trial assailed the sufficiency of the evidence to support the conviction.

*F. L. Irvine*, for the appellant.

*J. H. Burts*, Assistant Attorney-General, for the State.

White, Presiding Judge. In his charge to the jury in a criminal case the trial judge is required to set forth distinctly the law applicable to the case (Code Crim. Proc., art. 677), and the penalty affixed by the statute to the offense for which the party is on trial is not only a part but a most important part of the law of the case. If the charge is incorrect as to the penalty, though the error may be in favor of the prisoner, the conviction cannot stand. (44 Texas, 525; 1 Texas Ct. App., 440, 514, 605; 2 Texas Ct. App., 494; 7 Texas Ct. App., 338; 5 Texas Ct. App., 38; *Wilson* v. *The State,*

14 Texas Ct. App., 524; *Turner* v. *The State*, 17 Texas Ct. App., 587; *Bouldin* v. *The State*, 8 Texas Ct. App., 624; *Cohen* v. *The State*, 11 Texas Ct. App., 337, and *Howard* v. *The State*, decided at the present term, *ante*, p. 348.)

Under the old article of the Penal Code 722, robbery was made punishable " by confinement in the penitentiary not less than two nor more than ten years." But by an act passed April 12, 1883, and which took effect ninety days after adjournment of the Legislature (General Laws 18th Legislature, pp. 80, 81), article 722, Penal Code, was amended, and the penalty for robbery was fixed at " confinement in the penitentiary for life or for a term of not less than five years."

As charged in the indictment the offense in this case was alleged to have been committed since this amendment became the law of this State; that is, it is alleged to have been committed on the —— day of January, A. D. 1885; and the evidence shows that it was committed on the 4th day of January, 1885. Under the indictment and evidence it was clearly the duty of the court to charge the penalty as fixed by the amendment, viz.: at " confinement in the penitentiary for life or for a term of not less than five years." This the court did not do, but, on the contrary, charged the jury as provided in the old law (which had unquestionably been re-enacted in full by the amendment, because the latter covered the entire subject-matter of article 722), (*Harold* v. *The State*, 16 Texas Ct. App., 157), that, if they found the defendant guilty, they would " assess his punishment at confinement in the penitentiary for a term of not less than two nor more than ten years."

For this radical error in the charge of the court the judgment is reversed and the cause remanded for a new trial.

*Reversed and remanded.*

[Opinion delivered June 20, 1885.]